No. 4983.

STATE EX REL. EAGER, ELLERMAN & CO. VS. CHARLES CLINTON, AUDITOR.

The clerk certifies that the present record contains a full, complete, and correct transcript of the record, including all proceedings and documents filed, testimony and evidence adduced on the trial of the cause, etc., and there is no suggestion of a diminution of the record attributable to the appellant.   This is all that this court can inquire into.   The motion to dismiss is refused.

The plaintiffs, as transferees of one Elder, allege that a certain amount of work contracted for on behalf of the State has been done according to the contract; that it has been approved by the parties authorized to do so; that the bonds provided for in the act of eighth of September, 1868, have been signed, and that they are now in the hands of the Auditor, who refuses to deliver them up.   Wherefore they pray for a mandamus on the Auditor to compel him to deliver them.

The present Attorney General, as well in behalf of the Auditor of Public Accounts as in behalf of the State, and intervening in that interest, opposes the issue of the bonds.

The contract under which relators did their work was entered into with the Board of Engineers.   This board had no authority to enter into the contract.   They could only do what they were empowered to do by the Legislature, and the Legislature never empowered them to make any such contract.   It is true that the commissioners originally appointed were authorized to make a contract for placing a dam at Tone's bayou.   This they did.   But it was stipulated in that contract that

### NEW ORLEANS, JANUARY, 1876. 53

State ex rel. Eager, Ellerman & Co. vs. Clinton.

the work should be done within a certain time. The time expired and the work was not done. There was therefore an end to that contract. Then the commissioners appointed by that act became *functi officio*, and their successors were only competent to inspect and cause to be completed the work which had been begun under the contract. But the work was at an end; the work was never commenced before the second contract was entered into, and this contract, as before stated, the Board of Engineers had no authority to make. It is true that in the opinion of the then Attorney General it was the duty of the Board of Engineers to carry on the work and to make the contract, and that it was sanctioned by the then Governor. But neither the Attorney General nor the Governor nor the Board of Engineers had any authority to renew a dead contract. This could only be done by the power which authorized, to wit: the Legislature.

APPEAL from the Superior District Court, parish of Orleans. *Hawkins*, J. *J. W. Thomas* and *A. C. Lewis*, for relator and appellant. *A. P. Field*, Attorney General, and *J. Q. A. Fellows*, for respondent and appellee.

MORGAN, J. William Durbridge moves to dismiss this appeal, on the ground that the record in the case of the State ex rel. Durbridge, the same defendant, is not copied into the record before us.

The two cases are docketed under different numbers in the court below. The court ordered them to be reopened for the purpose of hearing further testimony. It was also ordered that they be consolidated and tried as one.

The clerk certifies that the present record contains a full, complete, and correct transcript of the record, including all proceedings and documents filed, testimony and evidence adduced on the trial of the case, etc., and there is no suggestion of a diminution of the record attributable to appellant. This is all that we can inquire into.

Motion to dismiss is refused.

In 1868 the Legislature passed an "act to provide for the improvement of Red river." Acts 1868, p. 72. The act provides that "the navigation of Red river shall be improved by filling up at a proper point on Old river, so as to prevent the waters of Red river from running into Tone's bayou during low-water season, and by removing logs, trees, stumps, and other obstructions to the navigation of Twelve-Mile bayou, Red bayou, Polson's bayou, Polson's lake, and other lakes above Shreveport, and also by making cut-offs on said bayous at different bends."

In order to have the above works completed during the low water (September, 1868,) William Mudgett, Charles W. Keeting, M. H. Crowell were appointed commissioners in behalf of the State, and were authorized to employ a competent engineer, who was to examine the projected work and prepare plans and specifications of the work to be done, and to make the same so as to show the proposed and necessary work in convenient sections, with estimates of the just and proper cost of each section and of the whole work.

As soon as the estimates, plans, and specifications were prepared the commissioners were authorized to contract in the name of the State with a competent person or persons to do said work according to such plan and specifications, payable in installments on the completion of each section, and upon the certificates of said commissioners that the section had been completed according to contract.

The total cost of the improvements was not to exceed one hundred and thirty-five thousand dollars, for which the contractor was to bind himself to receive the bonds of the State, payable to bearer, at twenty years after the date of the contract, the bonds to bear seven-thirty per cent interest per annum.

The Governor was to cause to be printed the number of bonds necessary for delivery to the contractor on presentation of the certificate of the commissioners that he (the contractor) was entitled to the same, the bonds to be for one thousand dollars each, with twenty coupons for the annual interest appended thereto. The bonds were to be signed by the Governor, countersigned by the Secretary of State, under the seal of the State, the Auditor of Accounts, and State Treasurer; they were to be delivered to the Auditor, and issued by him to the contractor upon presentation of the certificates of the commissioners aforesaid.

If a Board of Public Works was created for the State, and the members thereof qualify and organize as may be provided by law, the commissioners were to turn over to the board whatever they may have done under and according to the requirements of this act, and said board shall take possession and control of said works, and contract for making the same, if not already under contract; and if already under contract, were to superintend the work and direct the same according to the contract, and do all things required to be done by the commissioners designated by the act.

On the tenth of September of the same year, the Legislature established a Board of Public Works. Acts 1868, p. 82.

On the twenty-fourth of February, 1871, the Legislature passed an act creating a Board of State Engineers. Acts 1871, p. 391. This act provided that as soon as the Board of Engineers should be organized they were to take possession of the books, etc., and all State property held by the Board of Public Works, and complete the labor or contracts then existing of that board.

It is to be observed that the Legislature contemplated by the act of the eighth of September, 1868, that the work therein authorized to be done was to be finished during the then low stage of water in the Red river.

Two days after the passage of the act, to wit: on the tenth of September, 1868, William S. Mudgett, acting as chairman of the Board of Commissioners appointed by the above act, entered into a contract with

Andrew J. Oliver and George Alban, by which the last-named parties agreed to do the work specified in the act aforesaid, according to the specifications annexed to the contract, which, the contract recites, had been prepared by W. J. McCulloh, the engineer appointed by the com-missioners.

The sum to be paid them was the exact amount which the appropria-tion was not to exceed, viz: one hundred and thirty-five thousand dollars. The work was divided into four sections. Three sections have been paid for. We have to deal with the first section, which provided for the "con-struction of a dam across Old Red river, at the most eligible point near Scopini's Cut-off above the mouth of Tone's bayou," for which work, on the completion thereof, the contractors were to be paid fifty thousand dollars.

By the contract the whole was to be completed on or before the first of January, 1869, but in case the water should rise before that date the time in which it was to be completed was to be extended to the first of November, 1869.

The work was not completed within the time specified.

Some time thereafter Oliver & Alban assigned all their right and interest in the contract above described to D. J. Elder.

It appears that Elder claimed that the whole work had been done, and demanded settlement therefor, but on the twentieth of September, 1872, he withdrew his application for settlement and payment therefor, and instead thereof filed a petition with the Board of State Engineers asking for an extension of time in which to complete the contract, in consideration whereof the Board of State Engineers, assuming to act under the authority of the statute of the eighth of September, 1868, ex-tended the time for the completion of the contract for the building of the dam in Tone's bayou to the first of January, 1873. It is proper to state that these extensions were made under the opinion of the then Attorney General that the Board of Engineers had the power to grant them, and that they received the approval of the then Governor of the State.

Eager, Ellerman & Co., the transferees of Elder, allege that the work has been done according to contract; that it has received the approval of the Board of Engineers; that the facts have been reported to the Governor; that the bonds provided for in the act of the eighth of Sep-tember, 1868, have been signed by the Governor, Secretary of State, Treasurer, and Auditor of Public Accounts, and that they are now in the hands of the Auditor, who refuses to deliver them up.

They pray for a mandamus on the Auditor to compel him to deliver them.

The Auditor answers and says that "the facts stated in the petition,

56           SUPREME COURT OF LOUISIANA,

State ex rel. Eager, Ellerman & Co. vs. Clinton.

so far as his knowledge extends, are true, and the certificate, in due form, of the president of the State Board of Engineers accompanied the demand for the bonds." He waived service and submits the question of the issue of the bonds (being act No. 59 of 1868) for adjudication.

The present Attorney General, as well in behalf of the Auditor of Public Accounts as in behalf of the State, and intervening in that interest, opposes the issue of the bonds on the grounds—

First—That act No. 59 of 1868 is in violation of article 111 of the constitution of the State, is null and void, and that no rights can be claimed under it.

Second—That the contract under which the bonds are claimed was a fraud upon the State, and never had any legal or valid object, and could, by reason of fraud and corrupt practices in obtaining the contract, confer no legal or equitable claim.

Third—That the work under the contract with Oliver & Alban was never done as contracted for, and that the certificates therefor were improperly issued; and

Fourth—Denies generally the averments of the petition, and specially denies any contract binding on the State with the relators or their assigns,

The fourth and last count is the only one which it is necessary to examine.

The contract under which relators did their work was entered into with the Board of Engineers. This board had no authority to enter into the contract. They could do only what they were empowered to do by the Legislature, and the Legislature never empowered them to make any such contract. It is true that the commissioners originally appointed were authorized to make a contract for placing a dam at Tone's bayou. This they did. But it was stipulated in that contract that the work should be done within a certain time. The time expired, and the work was not done. There was therefore an end to that contract. Then the commissioners appointed by that act became *functi officio*, and their successors were only competent to inspect and cause to be completed work which had been begun under the contract. The first contract was at an end before the second contract was entered into, and this contract, we repeat, the Board of Engineers had no authority to make. We do not forget that in the opinion of the then Attorney General it was the duty of the Board of Engineers to carry on the work and to make the contract, and that it was sanctioned by the then Governor; but neither the Attorney General, the Governor, nor the Board of Engineers have any authority to revive a dead contract. This could only be done by the power which authorized it, viz: the Legislature.

Judgment affirmed.